UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **ELIZABETH WONG, et al.,** | : | Civil Action No. 05-2588 (AET) |
| Plaintiffs, | : | |
| v. | : | MEMORANDUM OPINION |
| **REGINA THOMAS, et al.,** | : | |
| Defendants. | : | |

**HUGHES, U.S.M.J.**

  This matter is before the Court upon the Motion of Plaintiff Elizabeth Wong ("Plaintiff") to Compel the Turnover of a Terminated Criminal Investigation File of the Division of Criminal Justice. Defendants Regina Thomas, Micah Rasmussen, Diane Legreide, Jamie Fox, Amy Mansue, Kellie Drakeford, Michael Angulo, State of New Jersey, and New Jersey Higher Education Student Assistant Authority ("Defendants") oppose the Motion. The criminal investigation of Plaintiff conducted by the Division of Criminal Justice ("DCJ") was completed on January 28, 2005. Plaintiff now seeks discovery of the criminal investigation file in the present civil action in which she claims wrongful termination. The Court reviewed the written submissions of the parties and conducted oral argument on January 9, 2007. Although Counsel in this civil case had briefed the issue and appeared at oral argument, another Deputy Attorney General representing the DCJ also appeared, for the first time at the oral argument, and presented argument as to the turnover of the closed criminal file. For the reasons that follow, Plaintiff's Motion to Compel the Turnover of the Terminated Criminal Investigation File is granted in part and denied without prejudice in part.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

A.  *Criminal Investigation*

  In March 2002, Plaintiff, an Asian-American, was appointed as Executive Director of the

Higher Education Student Assistance Authority ("HESAA") by Governor McGreevey.  (Pl.'s Mem. at 3).  Plaintiff alleges that during her tenure, she was pressured to favor African-Americans in the hiring process, not to hire Asian-Americans, and to make HESAA funds available only to African-American students.  Id.  Plaintiff also claims that she was criticized for her involvement in the Asian-American community and instructed not to socialize with Asian-Americans.  Id.  Plaintiff reports that she refused to comply with Defendants' allegedly unlawful demands and was forced to resign on June 30, 2004.  Id.  Defendants' basis for Plaintiff's forced resignation was that she had misappropriated HESAA funds.  Id.  Defendants claim that Plaintiff spent HESAA funds for various personal purposes and that Defendants Jamie Fox, then-Chief of Staff, and Diane LeGreide, then-Chief of Management and Operations, had particular concerns "with the increasing OPRA requests coming in from the press regarding Plaintiff's spending."  (Defs.' Opp. Mem. at 5).

Defendants forwarded the allegations regarding Plaintiff's spending of HESAA funds to the State Commission of Investigation.  Id. at 6.  On May 6, 2004, the Commission of Investigation referred Defendants' allegations regarding Plaintiff to the New Jersey Attorney General.  (Pl.'s Mem. at 3).  The Division of Criminal Justice ("DCJ") then began a criminal investigation of Plaintiff and the allegations that she misappropriated HESAA funds.  Id. at 4.  The DCJ closed its criminal investigation of Plaintiff on January 28, 2005 after finding no evidence of wrongdoing.  Id.  At the close of the investigation, Deputy Attorney General Susan Kase produced a Close-Out Memorandum in which she identified the steps taken in the criminal investigation and the DCJ's conclusion regarding the allegations.  (Pl.'s Ex. B).  The Close-Out Memorandum concludes that "[t]he investigation did not find any evidence that Elizabeth Wong misappropriated HESAA funds."  Id.  Therefore, Ms. Kase recommended that the criminal case against Plaintiff be closed.  Id.

*B.     Civil Litigation*

On May 16, 2005, Plaintiff filed suit against Defendants alleging that she "had been wrongfully terminated by Defendants." (Pl.'s Mem. at 4). Specifically, Plaintiff alleged twenty (20) Counts against Defendants including: (1) violation of Plaintiff's Civil Rights pursuant to 42 U.S.C.A. §§ 1981, 1982, 1983, 1985, 1986, and 1988; (2) violation of Plaintiff's state and federal constitutional rights; (3) violation of the New Jersey Law Against Discrimination; (4) defamation; (5) false complaint of unprofessional conduct; (6) work environment harassment; (7) wrongful discharge in violation of public policy; and (8) bad faith. (See Pl.'s Compl. at ¶¶ 58-154).

Discovery in this matter has been ongoing for approximately a year and a half during which time Defendants have produced over 17,000 pages of documents. (Defs.' Opp. Mem. at 6). Based on Plaintiff's claims that "the false allegations concerning her misappropriation had been utilized by the Defendants as a pretext for her termination," Plaintiff sought discovery from Defendants of all documents related to any investigation of Plaintiff's alleged misappropriation. (Pl.'s Mem. at 4). On August 8, 2006, in response to Plaintiff's discovery requests, the DCJ produced a copy of the Close-Out Memorandum to counsel for Defendants via facsimile.

On August 25, 2006, Defendants produced to Plaintiff supplemental documents totaling 125 pages and a privilege log. Id. Six documents were identified as being withheld from production based on attorney client or work product privilege. (Pl.'s Mem. at 5). Attached to the privilege log were the privileged documents detailed on the log. (Defs.' Opp. Mem. at 6-7). Defendants claim that the privileged documents were attached to the privilege log as the result of a clerical error. Id. at 7. The DCJ Close-Out Memorandum was included in the supplemental production to Plaintiff and was apparently inadvertently produced. Id. The Privilege Log identified the Close-Out Memorandum as work product and described it as "Memorandum of

3

Counsel." (Pl.'s Mem. at 5). Defendants' Counsel further produced three other documents listed on the Privilege Log. Id.

On October 5, 2006, Plaintiff took the deposition of Defendant Legreide. Id. at 6. Plaintiff learned of the Close-Out Memorandum's inclusion in Defendants' Privilege Log during the deposition when Defendants objected to any questions regarding the memorandum and instructed Ms. LeGreide not to answer questions posed by Plaintiff's counsel. Id. Immediately following the deposition, Defendants submitted letters to Plaintiff demanding the return of the privileged documents. (Defs.' Opp. Mem. at 7). When this dispute could not be resolved informally, the Court held oral argument on October 10, 2006. (Pl.'s Mem. at 6). Following oral argument, the Court permitted Plaintiff to file a formal motion for a turnover order if she wanted production of the DCJ Closed File and Close-Out Memorandum. Id. At all times, in statements to the Court and Plaintiff's Counsel, Defense Counsel in this case advised that she, and not anyone at the DCJ, should receive all requests for the investigative file.

Plaintiff filed the present motion to Compel the Turnover of the Terminated Criminal Investigation File on November 10, 2006. (See Dkt. no. 05-2588, entry no. 33). Plaintiff argues that documents prepared as part of a criminal investigation are not entitled to work product protection. (Pl.'s Mem. at 7). Plaintiff further argues that she has substantial need for the documents and is unable to obtain their substantial equivalent. Id. at 9-10. Plaintiff further argues that the Close-Out Memorandum is discoverable even if the Closed File is not. Id. at 11.

Defendants claim that they are not in possession or control of the documents sought by Plaintiff. (Defs.' Opp. Mem. at 8). Defendants further contend that Plaintiff has not given proper notice to the DCJ. Id. at 9. Defendants next argue that the Close-Out Memorandum is protected by the attorney work product privilege. Id. at 11, 15, 16. Defendants further argue that Plaintiff cannot demonstrate substantial need for the documents. Id. at 21-22.

On the day of oral argument, counsel for the DCJ appeared and argued, for the first time, that (1) the DCJ cannot turn over the criminal file without a Subpoena or Court Order and (2) certain documents in the file are privileged and not subject to turnover. Specifically, counsel for the DCJ argued that the following privileges applied: (1) attorney work product privilege; (2) deliberative process privilege; (3) "innocent third-party privilege"; and (4) "investigatory process privilege."

## II.     DISCUSSION

Plaintiff argues that under Federal Rule of Civil Procedure 26(b)(3), documents prepared as part of a criminal investigation are not entitled to work product protection. (Pl.'s Mem. at 7). Plaintiff further argues that if the Court finds the documents to be protected work product, she has substantial need for the documents at issue and is unable to obtain their substantial equivalent. Id. at 9-10. Plaintiff further contends that even if the motion for the Closed File is denied, the Close-Out Memorandum is discoverable. Id. at 11. Plaintiff specifically argues that the Close-Out Memorandum was not prepared in anticipation of litigation and that Defendants waived their claim to work product privilege by producing the documents to Plaintiff. Id. at 11-15.

Defendants claim in opposition that the Court cannot order them to turnover documents that are not in their possession or control. (Defs.' Opp. Mem. at 8). Specifically, Defendants state that the Division of Criminal Justice, not the Division of Law, has control of the documents. Id. Defendants further contend that Plaintiff "has never given DCJ any kind of proper notice that she seeks to obtain the documents in the DCJ's prosecutorial file." Id. at 9. Defendants further argue that the Close-Out Memorandum is protected by the attorney work product privilege because (1) it is a pre-decisional internal memorandum created for the purpose of determining whether or not to criminally prosecute Plaintiff, (2) it was prepared in connection with a

previous, related case, and (3) the privilege was not waived by inadvertent production or by disclosure by DCJ to defense counsel. Id. at 11, 15, 16. Defendants further argue that Plaintiff cannot demonstrate substantial need for the documents because Defendants asked Plaintiff to resign based on their legitimate business decision, not on the outcome of any criminal investigation. Id. at 21-22.

Plaintiff argues in reply that "Defendants' counsel [] previously represented to this Court that she would effectuate service upon the proper party at the DCJ." (Pl.'s Reply Mem. at 2). Plaintiff further responds that many of the cases Defendants cite address requests made under the Freedom of Information Act for investigative documents of a third party. Id. at 6. Plaintiff distinguishes that the present case involves the target of the prior criminal investigation, as opposed to a third party, seeking release of documents from her own terminated criminal investigation. Id. at 6.

### A.    *Federal Rule of Civil Procedure 26(b)*

Federal Rule of Civil Procedure 26 governs the scope of discovery and provides, in relevant part, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). One of the most commonly claimed privileges is work product. The work product privilege was designed to prevent attorneys from using the discovery process to unjustly benefit from the work of their opponents. Carter v. City of Philadelphia, 2000 U.S. Dist. LEXIS 6658 at * 3 (E.D. Pa. 2000); see also Hickman v. Taylor, 329 U.S. 495 (1947). "Courts have expressly found the privilege unavailable when a prosecutor in a prior criminal investigation later objects to discovery of her work product by a litigant in a related civil lawsuit." Hernandez v. Longini, 1997 U.S. Dist. LEXIS 18679 at * 5 (N.D. Ill. 1997); see also Doubleday v. Ruh, 149 F.R.D. 601, 606 (1993) (quoting Shepherd v. Superior Court of Alameda County, 550 P.2d 161 (1976)) ("[A] recent

search of other jurisdictions found 'no authority holding that a public prosecutor – having completed his investigation and having announced . . . that no further action would be taken by him – is entitled to rely upon work product doctrine when the fruits of his investigation become relevant to civil litigation to which he is not a party.'").

Further, the danger of a "less diligent attorney raiding the file of a previously diligent attorney" is not present when the previous case was criminal and the present case is civil. Hernandez, 1997 U.S. Dist. LEXIS 18679 at * 6 (quoting Schultz v. Talley, 152 F.R.D. 181, 185 (W.D. Mo. 1993) (citing Doubleday, 149 F.R.D. at 607)). Similarly, there is no risk of jeopardizing a criminal investigation that is ongoing. Hernandez, 1997 U.S. Dist. LEXIS 18679 at * 6-7.

In the present case, Defendants claim that the DCJ's closed criminal investigation file and Close-Out Memorandum are protected by work product privilege. The documents at issue were produced by Deputy Attorney General Susan Kase for the New Jersey Attorney General's Division of Criminal Justice. The DCJ investigated allegations by Defendants that Plaintiff misappropriated HESAA funds and concluded in January 2005 that the "investigation did not find any evidence that Elizabeth Wong misappropriated HESAA funds." See Pl.'s Ex. A. The criminal case against Plaintiff was then closed. Plaintiff is presently seeking production of the criminal file and Close-Out Memorandum in her civil action against Defendants for employment violations.

Similar to the prosecutor in Hernandez and the county officials in Doubleday, the DCJ cannot assert work product privilege over its terminated criminal investigation file or Close-Out Memorandum. As a threshold matter, Defendants' counsel requested that she be the one to serve the DCJ in order to put the motion "into context" and to ensure that it reached the appropriate representative. See Wolfe Cert. at ¶ 5. Therefore, Defendants' argument that the DCJ did not

receive proper notice is not viable.  Further, as in Hernandez, this case presents no risk that a less diligent attorney would use the work of an opponent's counsel because the DCJ is not a party in the present matter and Defendants were not parties in the criminal matter.  There is also no risk of interference with an ongoing criminal investigation because the DCJ's criminal case involving Plaintiff was closed approximately one year ago.  Therefore, the DCJ's closed file and Close-Out Memorandum are discoverable to Plaintiff who is seeking the information for use in a subsequent civil action.

### B.   *Substantial Need*

Federal Rule of Civil Procedure 26 provides, in relevant part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

FED. R. CIV. P. 26(b)(3).  Therefore, documents that are otherwise protected by the work product privilege are discoverable if the party seeking the documents can show substantial need for the documents and an inability to obtain their substantial equivalent without undue hardship. However, the Court at all times protects against the disclosure of "mental impressions, conclusions, opinions, or legal theories of an attorney."  FED. R. CIV. P. 26(b)(3); see also Carter, 2000 U.S. Dist. LEXIS 6658 at * 5.

Even if the DCJ's closed file and Close-Out Memorandum were produced in anticipation of litigation and otherwise protected by the work product privilege, Plaintiff has shown substantial need for the information she is seeking pursuant to Rule 26(b)(3).  The closed

criminal file and close out memorandum are mainly factual in nature. The Close-Out Memorandum "details the specifics of the allegations made against Ms. Wong, the steps taken to investigate these allegations, the statements from Eugene Hutchins, "SI Graybill", and State Auditors Joseph Ettenger and Anthony Glebocki." (Pl.'s Mem. at 11). The memorandum further identifies the "sole source of the allegations against Ms. Wong as simply a 'disgruntled secretary at HESAA.'" Id. Therefore, Plaintiff meets her burden under Rule 26(b)(3) by showing that she has a substantial need for the documents and cannot obtain their substantial equivalent by other means without undue hardship. Although the Close-Out Memorandum appears to contain factual information, allegations, investigatory steps, and statements of witnesses, not "mental impressions, conclusions, opinions, or legal theories," the Court will allow Defendants to produce a copy of the document redacted to exclude what they believe to be "mental impressions, conclusions, opinions, or legal theories" pursuant to Rule 26(b)(3).

In the present matter, Defendants claim that Plaintiff's forced resignation was based on their belief that she had misappropriated HESAA funds. The subsequent criminal investigation into Plaintiff's expenditures is closely related to Plaintiff's current claim against Defendants for employment violations because Plaintiff asserts that misappropriation of funds was simply a pretext. Therefore, the DCJ's failure to find any evidence to support Defendants' allegations of misspending is highly relevant to Plaintiff's case. There is no other source, other than the Closed file and Close-Out Memorandum, that could provide the contemporaneous statements given to the DCJ during its investigation into Plaintiff's spending activity. Of course, it is important to note that the issue here is one of discoverability and not admissibility of evidence at trial.

Therefore, the Court will grant Plaintiff's motion insofar as it seeks the Close-Out Memorandum redacted to exclude "mental impressions, conclusions, opinions, or legal theories of an attorney" pursuant to Rule 26(b)(3). The Court will also order the State of New Jersey to

9

produce non-privileged documents in their entirety. The Court will deny without prejudice Plaintiff's motion insofar as it seeks documents for which the attorney for the DCJ claimed privilege during oral argument. Specifically, counsel for the DCJ claimed the following three remaining privileges: (1) deliberative process privilege; (2) "innocent third-party privilege"; and (3) "investigative process privilege." The Court has already ruled on the claimed attorney work product privilege.

   C. *Waiver*

The work product privilege can be waived by inadvertent disclosure of privileged documents. Jame Fine Chemicals, Inc. v. Hi-Tech Pharmacal Co., 2006 U.S. Dist. LEXIS 58235 at * 5 (D.N.J. 2006). The purpose of the privilege is to "maintain[] legal professionalism by precluding attorneys from capitalizing on an adversary's work efforts." Koch Materials Co. v. Shore Slurry Seal., Inc., 208 F.R.D. 109, 121 (D.N.J. 2002). Generally, information protected by the work product privilege is deemed discoverable once it is disclosed to an adversary. Jame Fine Chemicals, 2006 U.S. Dist. LEXIS 58235 at * 8. However, if the disclosure is inadvertent, then waiver is not automatic. Id. at * 9 (citing In re Grand Jury (Impounded), 138 F.3d 978, 981 (3d Cir. 1998)). In determining whether there is waiver, the Court applies a test similar to the one outlined in Ciba-Geigy Corp. v. Sandoz, 916 F. Supp. 404, 411 (D.N.J. 1996).

In the present matter, based on the Court's rulings that (1) the criminal file is not protected by work product privilege in a subsequent related civil action and (2) Plaintiff has met her burden of showing substantial need, there is no need to reach the issue of waiver.

   D. *Federal Rule of Civil Procedure 26(c)/Other Claimed Privileges*

Federal Rule of Civil Procedure 26(c) allows the Court, "for good cause shown," to limit discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c); see Pansy v. Borough of Stroudsburg, 23 F.3d 772

(3d Cir. 1994); see also Glenmede Trust Co. v. Thompson, 56 F.3d 476 (3d Cir. 1995).

In the present case, Plaintiff is seeking her own criminal investigation file, not that of an adversary or third party. Therefore, Defendants cannot demonstrate good cause to prevent the file's disclosure under Federal Rule of Civil Procedure 26(c) or Pansy. However, because the file sought by Plaintiff is a criminal investigation file, there may exist significant reasons not to disclose the information beyond the present litigation. Therefore, the Court finds that the closed criminal file shall be used for purposes of the present litigation only.

Again, for the first time at oral argument, the DCJ asserted the following three remaining privileges: (1) deliberative process privilege; (2) "innocent third-party privilege"; and (3) "investigatory process privilege." Accordingly, the Court will permit counsel for the DCJ to present a privilege log and accompanying memorandum of law no later than January 19, 2007. Plaintiff may submit a reply memorandum of law no later than January 29, 2007. Because the DCJ "intervened" after the matter was briefed and presented at oral argument, the Court will further permit Plaintiff's counsel to move for fees incurred in connection with the subsequent briefing within 60 days of the final resolution of the Motion to Compel turnover of the closed criminal file.

## III.  CONCLUSION

For the reasons expressed here, the Court finds that work product privilege does not apply to the DCJ's closed criminal file or Close-Out Memorandum. There is no risk of Plaintiff's counsel benefitting from the work of opposing counsel. Similarly, there is no risk of interference with an ongoing criminal investigation because the criminal case against Plaintiff closed in January 2005. Further, even if the work product doctrine did protect the documents, Plaintiff has met her burden under Rule 26(b)(3) by showing substantial need and inability to otherwise obtain the information without undue hardship. Therefore, Plaintiff's Motion to Compel the Turnover

of the Terminated Criminal Investigation File is granted insofar as it seeks non-privileged information in the file and the Close-Out Memorandum redacted to exclude "mental impressions, conclusions, opinions, or legal theories of an attorney." This information is to be used for purposes of this litigation only, pursuant to Rule 26(c).

      The Court will deny without prejudice Plaintiff's motion insofar as it seeks documents for which the attorney for the DCJ claimed privilege during oral argument. Counsel for the DCJ may present a privilege log and accompanying memorandum of law no later than January 19, 2007. Plaintiff may submit a reply memorandum of law no later than January 29, 2007. The Court will further permit Plaintiff's attorney to move for fees as a result of the dilatory assertion of privilege by the State of New Jersey. Plaintiff reserves the right to file for attorneys' fees incurred in connection with the subsequent briefing within 60 days of the final resolution of the Motion to Compel turnover of the closed criminal file.

An appropriate Order accompanies this Memorandum Opinion.

**Dated: January 10, 2007.**