<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| ELIZABETH WONG | : | |
| | : | |
| Plaintiff, | : | Civil No. 05-2588 (AET) |
| | : | |
| v. | : | **<u>MEMORANDUM AND ORDER</u>** |
| | : | |
| REGINA THOMAS, et al., | : | |
| | : | |
| Defendants. | : | |

---

<u>THOMPSON, U.S.D.J.</u>

<u>INTRODUCTION</u>

        This matter comes before the Court upon the Motion for Summary Judgment [76] of

Defendants State of New Jersey ("State"), the Higher Education Student Assistance Authority

("HESAA"), Regina Thomas, ("Thomas"), Micah Rasmussen ("Rasmussen"), Diane Legreide

("Legreide"), Jamie Fox ("Fox"), Amy Mansue ("Mansue"), Michael Angulo ("Angulo"), Kellie

Drakeford ("Drakeford") (collectively, "Defendants").  The Court has decided this motion based

upon the submission of the parties, without oral argument, pursuant to Fed. R. Civ. P. 78.  For

the reasons stated below, Defendants' Motion for Summary Judgment is granted on all federal

claims and on Plaintiff Elizabeth Wong's state law claim of discrimination.  The Court declines

to consider Defendants' Motion for Summary Judgment on the remaining state law claims and

remands this case back to the New Jersey Superior Court, Mercer County, Law Division, for

further proceedings.

<u>BACKGROUND</u>

A.   <u>Procedural Background</u>

Plaintiff Elizabeth Wong ("Plaintiff") is the former Executive Director of HESAA, the State's Guaranty Agency for federal student loans.  On or about May 16, 2005, Plaintiff filed suit against Defendants in this Court alleging discrimination based on race and national origin, wrongful termination, and that she was repeatedly pressured to engage in unlawful activity. Plaintiff filed a Second Amended Complaint on or about June 14, 2006.

On or about June 16, 2006, Plaintiff filed a second suit, arising out of similar facts, in the Superior Court of New Jersey of Mercer County.  On or about July 28, 2006, Defendants filed notice of removal, pursuant to 28 U.S.C. §1446(a), which was entered on August 10, 2006.  On or about October 17, 2006, the court consolidated Plaintiff's two lawsuits.

At the core of her allegations, Plaintiff alleges five causes of action under federal law and ten causes of action under the laws of the State of New Jersey. Plaintiff contends she was the victim of discriminatory and/or retaliatory practices while leading HESAA because she is an Asian-American.  Specifically, Plaintiff alleges violations of her rights under 42 U.S.C. §1981 (§1981); violations to her right to free speech and association, made actionable by 42 U.S.C. §1983 (§1983); a conspiracy borne out of racial animus, as proscribed by 42 U.S.C. §1985 (§1985); a failure to prevent said conspiracy, pursuant to 42 U.S.C. §1986 (§1986); and costs and attorney fees, actionable under 42 U.S.C. §1988 (§1988).

Plaintiff also files suit under the New Jersey Law Against Discrimination ("LAD") and further alleges a variety of state law claims, including, intentional infliction with economic advantage; wrongful discharge in violation of public policy; defamation; violation of her right to

privacy; intentional infliction of emotional distress; negligent infliction of emotional distress; and, violations of the New Jersey Constitution.

On February 22, 2008, Defendants filed the instant motion [76].  Successive requests for continuances were made.  On June 30, 2008, Plaintiff filed a Motion for Sanctions for Spoliation of Evidence [97].  This Court, on September 10, 2008, denied Plaintiff's Motion for Sanctions for Spoliation of Evidence [108].

    B.    Factual Background

In January 2002, Governor James McGreevey appointed Defendant Thomas Secretary of State.  (Second Am. Compl. [hereinafter "Compl."] ¶ 10.)  Defendant Mansue served as Deputy Chief of Staff to Governor McGreevey but did not hold that position when Plaintiff resigned at the end of June 2004.  (Def.'s Statement of Material Facts ¶ 10.)  Defendant Drakeford, from the time of Plaintiff's appointment until one year prior to Plaintiff's resignation, served as Deputy Chief of Staff for Management and Operations to Governor McGreevey. (Id. ¶ 13.)  Defendant Fox served as Chief of Staff for the Governor.  (Id. ¶ 11.)  Defendant Fox's primary responsibility was the day-to-day operations of the state government.  (Id. ¶ 21.)

On March 2, 2002, Governor McGreevey appointed Plaintiff as Executive Director of HESAA.  HESAA's mission is "to provide [New Jersey] students and families with the financial and informational resources to pursue their education beyond high school." (Compl. ¶ 17.)  The Executive Director is charged with many responsibilities, including: provide outreach to increase awareness of HESAA; work in consultation with other state entities involved in higher education; and oversee the hiring, firing, promoting, demoting and/or disciplining of employees. (Id. ¶ 18.)

Plaintiff, who is of Chinese descent, contends that Thomas, who is African-American, improperly interfered with HESAA.  Specifically, Plaintiff alleges mistreatment while serving as the Executive Director of HESAA in the form of "pressure" to hire African-Americans and to refrain from hiring Asian Americans (Compl. ¶ 32) at the direction of Thomas.

Plaintiff contends Defendants opposed extending employment offers to Asian-Americans. (Compl. ¶ 23.)  Plaintiff alleges she first noticed a bias against hiring Asian-Americans by Defendant Mansue's reaction to the "proposed hiring of an employee with an apparent Chinese and/or Asian-American name." (Id.)  Plaintiff alleges this was in or about April 2002.  (Id.)

Plaintiff alleges she needed special permission to hire Asian-Americans.  (Defs.' Statement of Material Facts ¶ 125; Pl.'s Dep. Vol. II 168.)  However, between April 2002 and through October 2002, Plaintiff hired two other Asian-Americans with no mention of the special permission she alleges was required.  (Defs.' Statement of Material Facts ¶ 128; Pl.'s Dep. Vol. II  177-78; Defs.' Statement of Material Facts ¶ 125; Pl.'s Dep. Vol. II 168.)

Plaintiff further alleges she received instructions to divert funds only to African-American students and to misdirect HESAA funds to African-American organizations outside the scope of HESAA. (Compl. ¶ 34.)  To substantiate her latter claim, Plaintiff points to two requests made by Defendant Thomas.  One of these requests was to support funding for a march commemorating the Underground Railroad.  (Defs.' Statement of Material Facts ¶ 47).  Plaintiff advised Defendant Drakeford that this request fell outside the scope of HESAA and that HESAA would be unable to support it.  (Id. ¶ 48.)  Defendant Thomas also requested that HESAA funds be used to support the Black Faith Group.  (Id. ¶ 49.)  Plaintiff asked Defendant Drakeford how this request was connected to HESAA.  (Id. ¶ 50.)  In any event, Plaintiff admits that after these

-4-

initial conversations with Defendant Drakeford, she was never contacted again by Defendant

Drakeford or Defendant Thomas regarding either request.  (Id. ¶¶ 48, 50.)

On October 29, 2002, Defendant Mansue was forwarded an anonymous letter ("October

29th letter"), originally received by the office of a State Senator, outlining alleged abuses of

Plaintiff's discretion in directing HESAA's funds.  (Compl. ¶ 27.)  Among other things, the

October 29th letter accused Plaintiff of using State funds to advance her own standing within the

Asian-American community, citing, for example, a breakfast held for the exclusive enjoyment of

Asian employees, and "parad[ing] around the corridors with Chinese diplomats and

businessmen." (Kemether Cert., Ex. J.)

The October 29th letter questioned Plaintiff's overall fitness to lead HESAA.  (Id.)

Plaintiff believes the October 29th letter was written by her former assistant, Antoinette

DeAngelo, (Pl.'s Dep. Vol. III at 206:9-18), though she has no proof.  Ms. DeAngelo did,

however, lodge a formal complaint against Plaintiff regarding Plaintiff's spending habits,

expenditures and perceived bias toward Asian-American job applicants at HESAA.  (Defs.'

Statement of Material Facts ¶ 17; Angulo Dep. 67.)

Upon receipt of the October 29th letter, Plaintiff met with Defendant Mansue to discuss

its contents. (Compl. ¶ 28.)  Defendant Mansue first questioned Plaintiff regarding her expenses

at this meeting. (Defs.' Statement of Material Facts ¶ 58; Pl.'s Dep. Vol. II 202-04.)  Defendant

Mansue cautioned Plaintiff that someone "might be out to get her."  (Id.)  Defendant Mansue

advised Plaintiff that she should "protect herself."  (Id. ¶ 60.)  Defendant Mansue advised

Plaintiff that, "as a result of the October 29th letter, she limit her association and activities within

the Asian American community."  (Id.)  Plaintiff advised Defendant she did not plan to change

her conduct.  (Id. ¶ 59; Pl.'s Dep. Vol. II 204.)

At this meeting or shortly thereafter, Plaintiff states Defendant Mansue, in response to a request to hire Mr. Albert Eng, stated "[A]fter [the October 29th  letter], you want to hire a Chinese-American?" (Defs.' Statement of Material Facts ¶ 127; Pl.'s Dep. Vol. II 173-5.)  Mr. Eng, a former associate of the Plaintiff, also of Asian-American descent, with whom the Plaintiff worked in a prior capacity at another company, was the only one Plaintiff could recall for whom she believed she needed "special permission" in order to hire.  (Defs.' Statement of Material Facts ¶ 126; Pl.'s Dep. Vol. II 172.)  Plaintiff can point to no instance where she was instructed to obtain permission in order to hire an Asian-American, or any other applicant.  Plaintiff was never told specifically she needed permission to hire anyone of any ethnic group.  (Defs.' Ctr. Statement of Facts 3.)

On March 4, 2004, Joseph Schmidt, a twenty-year veteran of HESAA, was terminated from his position, less than one month after being confronted by heretofore unsubstantiated allegations of an improper sexual relationship with Ms. DeAngelo.  (Defs.' Statement of Material Facts ¶ 18; Kemether Cert., Ex. K.)  On March 19, 2004, Mr. Schmidt submitted a letter to the Commissioner of the State of New Jersey Department of Personnel accusing Plaintiff of orchestrating his termination, hiring unqualified employees for positions, enabling a culture of fear, resulting in "very, very low morale" at HESAA.  (Id.)  The letter described a State agency where employees were transferred between different divisions without regard to their usefulness or ability, and attributes fault for this to the Plaintiff.  (Id.)

On April 22, 2004, The Burlington County Times, a New Jersey newspaper, filed pursuant to the Open Public Records Act (OPRA), a request for all petty cash receipts, purchase

orders, vouchers or other requests for reimbursement, including any supporting documents, filed by or on behalf of [Plaintiff] from March 2002 to Present."  (Certification of Attorney David B. Wolfe, Ex. TT.)  Gannett Newspapers, a media company with outlets in New Jersey, filed a broader OPRA request on June 24, 2004, asking for very detailed time sheets, vacation, spending and expense reports submitted by or on behalf of Plaintiff. (Wolfe Cert., Ex. SS; see also, Defs.' Statement of Material Facts ¶ 75; Pl.'s Dep. Vol. II 235, 238.)

Defendants contend that dozens of Plaintiff's expenses have, at best, a tenuous connection to HESAA, (Defs.' Statement of Material Facts ¶¶ 78-118), or no connection whatsoever.  (Id.)  Examples of these expenses include, but are not limited to, business cards Plaintiff made in Chinese (Defs.' Statement of Material Facts ¶ 78; Pl.'s Dep. Vol. II 240); two photo sessions with the "Marry Me Wedding Palace," totaling $198 (Defs.' Statement of Material Facts ¶ 79; Pl.'s Dep. Vol. II 246-48); two tickets to a show on Broadway, in New York City, with a reception thereafter at the Museum of Chinese in the Americas (Defs.' Statement of Material Facts ¶ 105; Pl.'s Dep. Vol. II 283-85); and attendance, at the expense of HESAA, at a Chinese New Year event with the Chinese Consular General.  (Defs.' Statement of Material Facts ¶ 117; Pl.'s Dep. Vol. II 307-08.)

On June 30, 2004, Mark Matzen, Deputy Chief of Staff to Defendant Fox, at the direction of Defendant Fox, asked Plaintiff for her resignation.(Defs.' Statement of Material Facts ¶ 35.) Plaintiff resigned from her position on June 30, 2004.  Defendants gave Plaintiff an opportunity to articulate a reason for her resignation.  (Id. ¶ 37.)  As her explanation, Plaintiff stated she was departing to China to attend to familial obligations.  (Id. ¶ 39.)  She was replaced by Defendant Michael Angulo, also an Asian-American.  (Defs.' Statement of Material Facts ¶ 14.)  Plaintiff

-7-

has no information that she was asked to resign because of her ethnicity.  (Defs.' Statement of Material Facts ¶ 14; Pl.'s Dep. Vol. II  337.)

In approximately February 2005, Richard Fair, the Auditor for the New Jersey Legislature, submitted the final audit ("final audit") of HESAA expenses covering a substantial portion of the time Plaintiff was Executive Director of HESAA.  (Wolfe Cert., Ex. Q.)  The final audit concluded that "financial transactions...were reasonable...and recorded properly." (Id.)  It also "noted certain internal control weaknesses and matters of compliance with laws and regulations that merited regulation."  (Id.)

The final audit explained that, between July 1, 2002, and September 30, 2004, HESAA incurred $440,000 in travel and official reception expenses.  Of that amount, a statistical sample of $153,000 found that in 31% of the sample, expenses were not always supported by "sufficient detail documentation."  (Id.)  The final audit took particular exception to 129 business meals lacking itemized receipts, totaling $16,300; train tickets, totaling $1,400; a personal cell phone bill, totaling $400; airfare, totaling $400; and, airport parking totaling $200.  (Id.)

The final audit found "unnecessary or unreasonable" limousine service, totaling $1,400; personal phone calls, totaling $200; and, rental car insurance, totaling $200.  The final audit also found unnecessary, unreasonable or insufficiently supported "purchases for a vehicular computerized navigation system, totaling $1,800; a staff Christmas party, totaling $1,700; business meals, totaling $1,300; and a PDA device, totaling $600."  (Id.)

DISCUSSION

A.    Standard for Summary Judgment

Summary judgment is appropriate if, on the record, "there is no genuine issue as to any

material fact and...the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In deciding whether summary

judgment should be granted, the Court considers the facts drawn from the "pleadings, the

discovery and disclosure materials on file, and any affidavits" and must "view the inferences to

be drawn from the underlying facts in the light most favorable to the party opposing the motion."

Fed. R. Civ. P. 56(c); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations

omitted).  To survive a motion for summary judgment, a plaintiff cannot rely merely on the

unsupported allegations of the complaint, and must present more than the "mere existence of a

scintilla of evidence" in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

      B.      Plaintiff's Discrimination Claims

The breadth of Plaintiff's allegations flow from conduct she alleges was discriminatory.

Accordingly, this Court will first address the claims she files pursuant to LAD.  Plaintiff

contends she was pressured to hire African-Americans and that she was discouraged from hiring

Asian Americans.  Plaintiff further alleges that her attempts to report Defendants' alleged

conduct resulted in harassment that ultimately forced her resignation, in violation of LAD.

N.J.S.A 10:5-12.

To prevail on a claim for discrimination pursuant to LAD, courts must follow the

standard set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Viscik v.

Fowler Equip. Co., 800 A.2d 826, 830 (N.J. 2002).  First, plaintiff has the initial burden of

establishing a *prima facie* case of discrimination by showing that: (1) she is a member of a

protected class, (2) she was qualified for the position, (3) she suffered an adverse employment

action, and (4) that defendant sought someone else who was not in [her] protected class to

perform her job once she was gone, or that she suffered the adverse action under circumstances that give rise to an inference of discrimination.  McDonnell Douglas, 411 U.S. at 802; Clowes v. Terminix Int'l, Inc., 538 A.2d 794, 805 (N.J. 1988).

If plaintiff succeeds in presenting a *prima facie* case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252 (1981); McDonnell Douglas, 411 U.S. at 802. Once the defendant has articulated a justification for the adverse action, the plaintiff must then prove that the "legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).  Plaintiff can demonstrate pretext "by showing that the employer's proffered explanation is unworthy of credence."  Id. (quoting Burdine, 450 U.S. at 256).  However, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff."  Id. (quoting Burdine, 450 U.S. at 253).

Thus, the initial burden is on Plaintiff to establish a *prima facie* case of discrimination. Here, Plaintiff is unable to establish all four elements of a *prima facie* case.  Assuming Plaintiff's status as an Asian-American places her in a protected class, she has satisfied the first prong of McDonnell Douglas.  Plaintiff's appointment at HESAA assumes her qualification for the position, and therefore satisfies the second prong of McDonnell Douglas.  Her eventual forced resignation establishes an adverse employment action, and satisfies the third prong under McDonnell Douglas.

The record however, reflects that Plaintiff's successor as Executive Director was also Asian-American.  Accordingly, Plaintiff's claim of discrimination needs to be shown in other

ways to meet her burden of production.  Id.

However, the record does not support her claim of discrimination because Defendants have articulate[d] some legitimate, nondiscriminatory reasons for her rejection." Burdine, 450 U.S. at 252; McDonnell Douglas, 411 U.S. at 802.

Here, Defendants have offered many nondiscriminatory reasons for Plaintiff's adverse employment action including, *inter alia*: a formal grievance filed against Plaintiff by a former employee of HESAA and a formal complaint filed by Plaintiff's former administrative assistant at HESAA questioning the propriety of her spending habits as well as Plaintiff's bias towards her own ethnic group.  Public dissemination of these allegations prompted inquiries regarding HESAA appropriations from many media institutions.  Accordingly, Defendants have articulated legitimate, nondiscriminatory reasons for Plaintiff's adverse employment action.

Plaintiff asserts the reasons offered by Defendants are not legitimate, but rather a pretext for discrimination.  To substantiate her claim, Plaintiff points to Third Circuit precedent.  Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994).  In Fuentes, the court held that in order to establish pretext, "Plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Id. at 765.

Relying on Fuentes, Plaintiff cites six "inherently contradictory explanations" given by Defendants that she asserts support her claims of pretext. Of these six, Plaintiff claims the initial reason given for her adverse employment action was misappropriation of HESAA funds, which Plaintiff denies.  Plaintiff then avers that Defendants requested that she voluntarily resign because of negative publicity related to her expenses.  Plaintiff alleges Defendants then claimed

-11-

they terminated her because of her inability to answer the June 24, 2004, OPRA media inquiry. Plaintiff next states that she was told that it was not the media inquiry, but rather Defendants' concern regarding negative publicity that formed the basis for firing her.  Plaintiff alleges that as the penultimate reason, she was told that it was not the OPRA requests, but once again misappropriation of HESAA funds that led to her adverse employment action.  Plaintiff states that the last reason given for her adverse employment action was her criticism of the Secretary of State.  (Pl.'s Opp. To Defs.' Mot. for Sum. Jud. 14-15.)

This Court concludes, that these reasons, even if accepted in the chronological order outlined by Plaintiff, do not satisfy the <u>Fuentes</u> framework.  <u>Fuentes</u> holds that for the Plaintiff to survive summary judgment, she must present sufficient evidence to meaningfully interject doubt into the stated reasons for the adverse employment decision, <u>Fuentes</u>, 32 F.3d at 765; or, Plaintiff must present "sufficient evidence from which a factfinder could reasonably conclude that an illegitimate reason was more likely than not the motivating or determinative cause of the adverse employment action."  <u>Id.</u>

Here, Plaintiff has offered no material facts in the record that render Defendants' reasons "unworthy of credence."  In fact, all of the reasons Plaintiff cites as "inherently contradictory" are, in reality, intertwined.  All six reasons are grounded in concerns over Plaintiff's spending irregularities and efforts to mitigate public alarm over the manner in which HESAA funds were distributed.  Moreover, Defendants have shown audits conducted in the wake of Plaintiff's departure from HESAA that question the manner in which funds were allocated.

Furthermore, Defendants have shown Plaintiff's tenure at HESAA was arousing strife among HESAA's employees and generating untoward press inquiries about HESAA's spending

improprieties.  Plaintiff may be correct that the manner in which Defendants proceeded with the adverse employment action may have been "unwise, imprudent, or incompetent, but that is not the inquiry."  Id.  Rather, the question for this Court turns on whether the reasons given by Defendants are "unworthy of credence," as outlined by Burdine.  This Court concludes that Plaintiff has pointed to no genuine issue of material fact that portrays Defendants' conduct or the reasons they proffer as "unworthy of credence."  Id.  Accordingly, Plaintiff has been unable to show that Defendants' reasons for terminating her were pretextual and summary judgment is appropriate.

     C.     42 U.S.C. §1981

In Count I of her complaint, Plaintiff alleges violations of §1981.  Section 1981 states "all persons shall have the same right to make and enforce contracts...as enjoyed by white citizens."  Section 1981(b) defines "make and define contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, termination of contracts, and the enjoyment of all benefits, privileges and conditions of the contractual relationship."  §1981(b).

To have a successful §1981 cause of action, the claimant must demonstrate "(a) [s]he belongs to an identifiable class of person who are subject to discrimination based on their race; (b) the defendant intended to discriminate against [her] on the basis of race; and, (c) the defendant's discriminatory conduct abridged a right under §1981."  Abini v. Oberlin College, 440 F.3d 350, 358 (6th Cir. 2006).

Here, Plaintiff does conceivably belong to a protected class which could be subject to discrimination, and would thereby satisfy the first prong of the Abini framework.  Id.  However,

-13-

as discussed above, Plaintiff has been unable to show discrimination.  The Court notes the record in this case is deficient of evidence of discrimination.  Plaintiff is therefore unable to satisfy the second prong of the <u>Abini</u> framework.  Accordingly, she is unable to meet her burden of production of establishing a cause of action under §1981.

Furthermore, Plaintiff does not initially specify which right she believes was violated. (Compl. ¶¶ 68-72.)  It is only in her opposition to the instant motion that Plaintiff clarifies her argument, and indicates her claim concerns her right to employment without discrimination. (Pl.'s Opp. To Defs.' Mot. for Sum. Jud. 27.)  Plaintiff's §1981 claim is rooted in her belief that her employment was terminated due to illegal employment practices—namely that she was discriminated against as an Asian-American.  (<u>Id.</u>)

However, in this case, Plaintiff is not merely an at-will employee; she is a political appointee.  The legislation creating HESAA describes her position as serving at the pleasure of the Governor.  N.J.S.A. 18A: 71A-5.  This implies the Governor has power to hire and fire employees within his office at-will.  "Those who are terminable at will have no property interest because there is no objective basis for believing that they will continue to be employed indefinitely."  <u>Hall v. Ford</u>, 856 F.2d 255, 266. (D.C. Cir. 1988).  Therefore, her argument supporting the third prong of the <u>Abini</u> is unsupportable due to the nature of her position.

Because Plaintiff is unable to withstand a summary judgment motion under LAD, as discussed above, her claim under §1981 cannot survive.  In the absence of discrimination, Plaintiff's argument that she enjoys employment as a matter of right is inapplicable to the case law she cites because of the nature of her position.  Therefore, because Plaintiff has failed to show that the reasons for her termination were pretextual, and because she was a political

-14-

appointee, Defendants' Motion for Summary Judgment on Count I of the Complaint is granted.

    D.    Eleventh Amendment Immunity & 42 U.S.C 1983

        1.    Direct Immunity

In discussing the merits of Plaintiff's claims under 42 U.S.C. §1983, the Court must first determine if Defendants are protected from suit. The Eleventh Amendment provides immunity for states against suits brought in federal court. The parties in this case contest HESAA's classification and whether HESAA enjoys Eleventh Amendment protection. Defendants assert that HESAA is a state agency and not a person, and thereby immune from suit. To support this argument, they cite Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989), which states "neither a state nor its officials acting in their official capacities are persons under §1983." Id. at 71. Plaintiff argues HESAA falls outside of Eleventh Amendment protection.

To determine if a state entity falls under the protection of the Eleventh Amendment, courts must determine if it is viewed as an "arm of the state." Mt. Healthy City Sch. Dist. Bd. Of Educ. V. Doyle, 429 U.S. 274, 280-81 (1977). If such a classification is proper, the entity enjoys immunity. If not, the suit may proceed. Id. To determine whether an entity is an arm of the state, three factors are considered: "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." Febres v. Camden Bd. of Educ., 445 F.3d 227, 229 (3d Cir. 2006) (quoting Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989)).

The legislation creating HESAA leans in favor of allowing suit. The applicable provision states "[HESAA] shall have the power...(d) to sue and be sued in its own name; (e) retain legal counsel of its choosing." N.J.S.A. 18A: 71A-8(d)(e). From this statute, it is permissible to infer

-15-

that HESAA contemplated suit against it.  It is a governmental agency with wide discretion.  The job description for HESAA's Executive Director provides for a considerable amount of autonomy in a wide range of policy areas including personnel, appropriations, and outreach.

Therefore, this Court concludes HESAA is not an arm of the state under the <u>Febres</u> analysis and suit against it is proper. Furthermore, because <u>Will v. Michigan Dep't. Of State Police</u> instructs that state officials sued in their official capacity are not persons under §1983, individually named Defendants sued in their official capacity are immune from suit.  <u>Will</u>, 491 U.S. at 71.  Therefore, because Defendants are named in their official capacity, pursuant to <u>Will</u>, they are immune from suit.

### 2.   Qualified Immunity

Defendants assert they are entitled to qualified immunity with respect to Plaintiff's §1983 claims.  Public officials who perform discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Sharrar v. Felsing</u>, 128 F.3d 810, 826 (3d Cir. 1997).  A court must decide whether the facts alleged establish that the official's conduct violated a constitutional right.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2000).  If the court concludes there has no been such violation, the inquiry ends and the officials are entitled to qualified immunity.  <u>Wright v. City of Phila.</u>, 409 F.3d 595, 600 (3d Cir. 2005).  If a violation is alleged, the Court then determines whether the constitutional right at issue was clearly established by inquiring "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  <u>Saucier</u> 533 U.S. at 202.    Applying <u>Saucier</u>, individually named Defendants do not enjoy qualified

immunity.  In order for Plaintiff to proceed with suit, absent qualified immunity on the part of the

defendants, she must satisfy the two-part test outlined above.  Plaintiff has listed many rights she

claims have been violated by Defendants' alleged conduct.  She contends she was subjected to a

pattern of discrimination and the target of a conspiracy.  She alleges claims under color of

contract and tort law.  Plaintiff further contends Defendants defamed her and engaged in a pattern

of conduct, intentional and neglectful, adverse to her mental, emotional and economic well-

being.  For purposes of this discussion, she has therefore satisfied the first prong of Saucier.

However, she must also establish "whether it would be clear to a reasonable [official] that

his conduct was unlawful in the situation he confronted."  Id.  Plaintiff has listed many

allegations which, if true, clearly establish the second prong of Saucier.  Taking, for example,

Plaintiff's claims of free speech; if Plaintiff's complaint were factually correct, she was

effectively terminated for threatening to expose a widespread pattern of discrimination against a

protected class.  The Court concludes that this conduct, if true, would be conduct which

Defendants would know to be illegal.  Therefore, Defendants' Motion for Summary Judgment on

Eleventh Amendment grounds is denied.

     E.     42 U.S.C 1983

     1.     Plaintiff's freedom of speech claims under 42 U.S.C. §1983

Plaintiff claims a violation of her freedom of speech when Defendants forced her

resignation in retaliation for her attempts to expose potential wrongdoing at HESAA.  She has

offered no evidence to support such a claim.

Public employees do not surrender their First Amendment rights by reason of their

employment.  Garcetti v. Ceballos, 547 U.S. 410, 417 (2006).  An employee enjoys first

amendment protection of speech so long as the employee speaks out on a matter of public concern and so long as the employee's interest in the speech outweigh the government's interest in efficient operations.  Pickering v. Board of Ed. Of Township High School Dist., 205, Will Cty., Illinois, 391 U.S. 563, 568 (1968).  In addition to satisfying Pickering, a successful Plaintiff must establish that the speech was a substantial or motivating factor in the challenged action of the employer.  Curinga v. City of Clairton.  357 F.3d 305, 309 (3d. Cir 2004).  The burden then shifts to the employer to demonstrate that "it would have taken the adverse action even if the employee had not engaged in the protected conduct."  Id. (quoting Pro v. Donatucci, 81 F.3d 1283, 1288 (3d. Cir 1996)).

Here, Plaintiff argues her speech was rooted in an attempt to shed light on systematic discrimination within HESAA, and therefore a public concern.  Defendants, however, contend Plaintiff's conduct was nothing more than "[her] airing private concerns related to her own employment or personal conflicts with various defendants."  (Defs.' Mot. for Sum. Jud. 28.)  As the Supreme Court has explained, "when a public employee speaks not as a citizen on matters of public concern, but instead only of [a] personal interest…a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."  Connick v. Myers, 461 U.S. 138, 147 (1983).

In this case, Plaintiff has been unable to show that her speech was of a public concern and not primarily of a private concern.  Even if Plaintiff were able to establish that her statements were of a public concern, she would have to demonstrate that her interest in making the speech outweighed governmental interest in controlling it.  This, Plaintiff has been unable to do. Pickering, 391 U.S. at 568.

-18-

The Third Circuit has given examples of governmental interest.  They include: "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."  Curinga, 357 F.3d at 309 (quoting Rankin v. McPherson, 483 U.S. 378, 388 (1987)).

Here, in addition to intra-office discord at HESAA, Plaintiff's conduct had promoted potentially embarrassing press inquiries into spending irregularities, two complaints into the office management style and its allocation of governmental resources, and a fractious relationship between HESAA and the Office of the Secretary of State.  All of these factors weigh heavily in favor of the government's interest.

Furthermore, Plaintiff has been unable to show that her speech was the substantial or motivating factor in the adverse employment action.  Accordingly, Defendants' Motion for Summary Judgment as to Count III is granted.

2.    Plaintiff's Freedom of Association claims under 42 U.S.C. §1983

Plaintiff asserts Defendants' conduct violated her freedom of association rights.  Plaintiff roots this claim in an incident where she contends Defendant Mansue looked unfavorably on a HESAA invitation to a Chinese-American ambassador; resources the Plaintiff was extending for outreach to the Chinese-American community; and instructions by Defendant Mansue to Plaintiff to limit her involvement in the Asian-American community.  (Compl. ¶ 27).

However, Plaintiff's allegations do not speak to Defendants' efforts to limit her associations as a private citizen, but rather speak to the appropriateness of actions taken in her official capacity and in the name of HESAA, with HESAA funds.  (Defs.' Mot. for Sum. Jud.

-19-

28.)  As the Third Circuit has explained, "public officials may be able to terminate...an employee based on political affiliation and conduct, regardless of freedom of association rights."  Curinga v. City of Clairton, 357 F.3d 305, 309 (3d Cir. 2004).

Furthermore, discharge of an employee is permissible if the employee occupies a policymaking position, such as the type Plaintiff held.  Id. at 310; see also Elrod v. Burns, 427 U.S. 347, 367 (1976).  For these reasons, Defendants' Motion for Summary Judgment on Plaintiff's claim of violation of her freedom of association under §1983 is granted and Count II of the complaint is dismissed.

F.      Plaintiff's 42 U.S.C. §1985 Claim

In Count III, Plaintiff alleges Defendants conspired to deprive her of her rights, in violation of 42 U.S.C. §1985. To establish a claim under §1985, Plaintiff must satisfy a four part test: (1) a conspiracy; (2) racial animus; (3) an act in furtherance of the conspiracy; and (4) deprivation of a right.  See United Brotherhood of Carpenters and Joiners of America Local 610 v. Scott, 463 U.S. 825, 828-29 (1983).  Furthermore, "it is insufficient for plaintiff to merely make broad, conclusory allegations of conspiracy, or to show merely that defendants had a common goal or acted in concert; rather, plaintiff must show, through specific facts, that defendants reached an understanding or agreement to violate plaintiff's federally created rights." Martin v. Del. Law School of Widener Univ., 625 F. Supp. 1288, 1297 (D.C. Del. 1985); aff'd., 884 F2d 1384 (3d Cir. 1989).

In this case, beyond routine conversations between natural channels within the Office of the Governor where she suspects she may have been the topic of discussion, Plaintiff can point to no incident, either general or specific, evidencing a conspiracy.  Furthermore, the record is

-20-

devoid of discrimination and animus, as discussed above.  Lastly, she has not shown she has been

deprived a right, as evidenced by the nature of her position, as also discussed above.

Accordingly, because Plaintiff has failed to meet her burden of production of her claim under

§1985, Defendants' Motion for Summary Judgment is granted on Count IV.

       G.     <u>Plaintiff's 42 U.S.C. §1986  Claim</u>

       To have a successful cause of action under 42 U.S.C. §1986, Plaintiff must show

"knowledge that any of the wrongs conspired to be done, and mentioned in §1985, are about to

be committed and having the power to prevent or aid in preventing the commission of the same,

neglects or refuses to do so."  Additionally, a successful §1986 claimant must show that "(1)

defendant had actual knowledge of a §1985 conspiracy, (2) defendant had the power to prevent

or aid in preventing the commission of a §1985 violation (3) the defendant neglected or refused

to prevent a §1985 conspiracy, and (4) a wrongful act was committed."  <u>Clark v. Clabaugh</u>, 20

F.3d 1290, 1295 (3d Cir. 1994).  "Transgressions of §1986 by definition depend on a preexisting

violation of §1985."  <u>Id.</u>; (quoting <u>Rogin v. Bensalem,</u> 616 F.2d 680, 696 (3d Cir. 1980)).  "Thus,

if elements of the §1985 conspiracy are missing, a §1986 cause of action is properly dismissed on

summary judgment."  <u>Clark</u>, 20 F.3d at 1295, n5.  Therefore, Defendants' Motion for Summary

Judgment is granted as to Count V.

       H.     <u>Plaintiff's 42 U.S.C. 1988  Claim</u>

       Plaintiff requests attorneys fees as outlined in §1988.  §1988(b) allows for the award of

attorney's fees, if claimant is successful in any of the causes of action pled under the specific

statutes outlined in §1988(b), namely §§1981, 1981(a) 1982, 1983, 1985, and 1986 of 42 U.S.C.

§1988(b).  Because Plaintiff has failed to satisfy her burden of production in any of these causes

of action, her claim under §1988 must also fail as a matter of law.  Accordingly, Defendants'

Motion for Summary Judgment is granted as to Count VI.

I.      28 U.S.C. §1367(c)

"The district courts may decline to exercise supplemental jurisdiction over a claim...if–the

district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C.

§1367(c).  Because this Court has dismissed all questions of federal law as pled by Plaintiff in

Counts I, II, III, IV and V of her complaint, and in the absence of diversity jurisdiction, this Court

remands this case back to the New Jersey Superior Court, Law Division, Mercer County,

pursuant to 28 U.S.C. §1367(c), for disposition of Plaintiff's remaining state law claims.

CONCLUSION

For the reasons given above, and for good cause shown,

It is on this 15th day of October, 2008,

ORDERED that Defendants' Motion for Summary Judgment [76] is GRANTED on

Counts I, II, III, IV, V, and VII of the complaint; and it is further

ORDERED that Defendants' Motion for Summary Judgment [76] is DENIED on all

remaining Counts; and it is further

ORDERED that this case is remanded to the New Jersey State Courts for adjudication on

Plaintiff's remaining state law claims.

s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.